*W. R. Thompson* for plaintiff; *Hardin and Riley* for defendant.

---

## Thompson *vs* Warren and Wife.

### ERROR TO THE CLARKE CIRCUIT.

*Femes covert.    Contracts.    Agents.*

JUDGE BRECK delivered the opinion of the Court.—Judge SIMPSON did not sit in this case.

Case stated.

IN January, 1837, the Legislature of Kentucky passed an act for the divorce of Mason Morris from his wife Malinda, upon condition that he should restore to her all the estate, personal and real, which he had derived from her; and in the event he should elect a di-

vorce upon this condition, he was authorized to file his bill in the Clarke Circuit Court, and the Court, by its commissioner, was to ascertain the estate of said Malinda at the time of her intermarriage with said Mason, and when ascertained and delivered over to her, the Court was to decree him a divorce.

In March, 1837, Morris filed his bill, electing to comply with the condition imposed by the act, praying the appointment of a commissioner to ascertain the extent of his liability or the property to be restored, and that a divorce might be decreed him.

In October, 1837, the said Malinda entered into a written contract with her brother-in-law, Haysin Thompson, by which she agreed to surrender to him the entire control and management of the suit with her husband, and to give him one half of all the property and money which she might recover from him, or which he might surrender. Thompson agreed to risque his trouble and the costs of the suit, or to lose the one and pay the other, whether any thing was obtained or not from Morris.

In 1840, the suit was terminated and Morris paid, or secured and delivered over to Thompson, as the agent of Mrs. Morris, about $1,200 in money and three slaves. Shortly afterwards Mrs. Morris obtained one, and the most valuable of the slaves. Thompson retained the other two, claiming one as his own and the other as belonging to him and Mrs. Morris in partnership. In 1841, he paid over to her $536 in money, being one half of the amount which he had collected of her claim or the amount decreed her against Morris, and leaving a balance thereof uncollected at that time, of about two hundred dollars. For the amount thus paid she gave a receipt.

In 1844, she exhibited this bill in chancery against Thompson, alledging that he, as her agent, had received from her former husband, a large amount of money and notes and certain slaves, and which he had failed to pay and deliver over to her. She prayed that he might be held to account for the same, and for the profits and hire thereof, and after deducting a reasonable compen-

Thompson
vs
Warren and
wife.
sation for his services, and his disbursements as her
agent, that he might be decreed to pay and deliver over
to her the residue.   During the progress of the suit she
intermarried with Thomas Warren.

Thompson, in effect, set up and relied upon the origi-
nal contract of October, 1837, insisting that it had been
recognized and ratified by the complainant after she
had become discovert, and substantially carried into
execution. The complainant denied its validity and
contended that it was not binding upon her.

The Court below was of opinion that the contract
'Decree of the   was not only champertous, but also void by reason of
Circuit Court.   the coverture of the complainant at the time she enter-
ed into it, and being based upon an illegal considera-
tion, that it was not susceptible of ratification.   That
whether executed or not, under the circumstances of
the case, the defendant could not render it available for
his protection.   And as no similar contract had been
made by the parties after the complainant was divorced
and when she was capable of contracting, that the de-
fendant was bound to account for the money and prop-
erty received, subject to a deduction for compensation
for his services and expenditures.

The Court decreed accordingly, and the defendant
has brought the case to this Court.

It is contended by counsel on the part of the defend-
ant, now plaintiff in error, that although the original
contract was void and not susceptible of confirmation,
yet that it was morally binding upon the complainant,
and as she had recognized and acquiesced in it when
laboring under no disability, and had assented to the de-
fendant's retaining one half of the money and property
received by him, and he having the same in possession,
that the contract was thereby, virtually carried into ex-
ecution, and that in a Court of conscience, she was en-
titled to no relief as to the one half thus held by her
assent, by the defendant.

It is true, in reference to champertous contracts, the
Where parties to   rule is as recognized by the Court below, that a Court
a contract are in   of equity, as both parties are considered equally culpa-
pari delicto, the   ble, will not grant relief against it when it has been ex-
Chancellor will
not   interfere

ecuted, nor enforce it where it is executory. Whether that rule would have a controlling influence upon this case, had the contract, as contended, been fully carried into execution, we need not decide, as in any view of the case we think it had, by neither party, been only partially and imperfectly executed. The transaction was not settled and closed. As to one. of the slaves there had been and could be no division in kind. So also in regard to a portion of the money and one or two notes delivered over by Morris; Thompson had not paid over and there was not even a pretence of a settlement. Besides, as to the slave *claimed* by Thompson, the complainant had executed no release or transfer; so in reference to his retaining a portion of the money, equal in amount to what he had paid over, she had given no release or receipt. So far then from the contract having been carried fully into execution, it can hardly be said to be executed and closed to any extent.

It is true it may be inferred that she assented to the defendant's claim to one half, under the original contract. But this at most, would be a mere recognition of a void contract, not susceptible of confirmation. There was no new contract and no claim set up by the defendant, except under the original contract. The complainant seeks no rescission of it and it seems to us it was not necessary that she should, to entitle her to relief. She files her bill calling upon the defendant to account for and pay over money and property which he had received as her agent. He cannot protect himself under the contract, nor has it been so carried into execution as to preclude the complainant from the relief sought in a Court of conscience. The argument urged by counsel, that the complainant was morally bound, is not, in view of the facts of the case, in our opinion, entitled to any weight. We have been unable to discover any thing in the record, which imposes upon the complainant any moral obligation to pay or allow the defendant any thing beyond a liberal compensation for his trouble and services, and expenditures.

She was not only a *feme covert* when the contract was entered into, but the defendant was her brother-in-

<div style="margin-notes">

THOMPSON
*vs.*
WARREN AND
WIFE.

when the contract has been executed.

A void contract is not susceptible of confirmation.

An agent of a *feme covert* who was unable to
</div>

THOMPSON
*vs*
WARREN AND
WIFE.

contract, should
be liberally com-
pensated for ser-
vices rendered,
out of her funds
in his hands.

law. He says, "she had not the means herself and greatly needed pecuniary as well as personal assistance, to carry on the suit with Morris." But it is not perceived how that fact can enhance the merit of his claim. On the contrary, it presents a strong reason, together with the confidential relation existing between him and complainant, why he should not have exacted from her a hard bargain, as in view of all the facts, we are constrained to consider this contract. In regard to her right of recovery, there was no controversy. The only question was as to the extent, and as to that the defendant, an intelligent man of business and the brother-in-law of the complainant, may be presumed to have had the means of forming a pretty accurate estimate. Under all the circumstances, the portion of the money for which he stipulated, greatly exceeded, not only a fair but even a very liberal compensation for his probable trouble and expenditures. There is nothing, therefore, as contended, in the morality of the case entitling the defendant to any special favor in the eyes of the Chancellor; and the Court below, we think, was right in any aspect of the case, in disregarding the claim set up by him.

We are also of opinion that there is no error in the decree in regard to the interest with which the defendant was charged. He resists the right of the complainant to the *principal* and does not pretend that he had not appropriated it to his own use. The presumption is he had, and under the circumstances, was properly chargeable with interest.

The allowance for his services, we think, was liberal, and perceiving no error in the decree, it is, therefore, affirmed.

*Turner, Eginton and Houston* for plaintiff; *Hanson* for defendants.